UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADVANCED PHYSICIANS, S.C.,

Plaintiff,

v.

NATIONAL FOOTBALL LEAGUE,

Defendant.

No. 19 CV 2959

Judge Manish S. Shah

# MEMORANDUM OPINION AND ORDER

## I. Background

Advanced Physicians filed a complaint against the National Football League in the circuit court of Cook County alleging tortious interference with prospective economic advantage. [1-1] at 5.[1] The complaint states that Advanced, a medical clinic, treated over 200 former NFL players, who were covered by the NFL Player Insurance Plan. [1-1] at ¶¶ 5, 9–10. Advanced provided a variety of services, including evaluations, diagnostic tests, physical therapy, rehabilitation treatment, and pain management. *Id.* at ¶ 5. These patients assigned their rights under the NFL insurance plan to Advanced. *Id.* at ¶ 13.

From 2007 to 2014, Advanced submitted claims to Cigna, the plan's administrator, and received payment. *Id.* at ¶¶ 12–13. In 2015, Cigna stopped processing Advanced's claims. *Id.* at ¶ 14. Advanced alleges that it discovered that the "NFL directed Cigna to deny all of Advanced's claims as [presumptively] work-

---

[1] Bracketed numbers refer to entries on the district court docket.

related. The NFL was upset that some of the retired players Advanced treated were using diagnostic tests performed by Advanced as evidence of a disability under the NFL's disability plan." *Id.* at ¶ 15.

As a result of these facts, Advanced "had and has a reasonable expectation that it would continue to treat its patients [former NFL players and their dependents] who were and are beneficiaries under the Plan." *Id.* at ¶¶ 17, 19. Advanced also alleges that the NFL's interference caused "declining patient visits by beneficiaries of the Plan, increased cost of Advanced's operations, loss of financing, and increased costs of financing. Advanced specifically denies that it is seeking as damages the value of the denied claims." *Id.* at 17.

The NFL removed the claim to federal court, [1], and filed a motion to dismiss, [10], or, in the alternative, a motion to transfer the case to the Northern District of Texas, [13], where Advanced has been litigating a related claim against the NFL's insurance plan and its administrator, Cigna. *See Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co., et al.*, No. 16-CV-2355 (N.D. Tex.). Advanced filed a motion to remand. [17].

## II. Motion to Remand

Whether this case should be remanded back to state court depends on whether the NFL's removal was proper, and removal of Advanced's state-law tort claim is only appropriate if the claim is completely preempted by federal law.

Complete preemption occurs when Congress has legislated an area of law so completely that a state-law claim automatically converts into a federal cause of

2

action—in spite of what was pled. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–65 (1987). In contrast, conflict preemption serves as a federal defense to a state-law claim and does not authorize removal to federal court. *Id.* at 63.

Under the Employee Retirement Income Security Act, complete preemption occurs if the plaintiff 1) could have brought its claim under ERISA § 502(a)(1)(B) at some point and 2) no other independent legal duty is implicated. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004); *see also Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 724 (7th Cir. 2017) (citing *Davila's* "two-step test"). Complete preemption effectuates ERISA's purpose, "to provide a uniform regulatory regime over employee benefit plans" that eliminates conflicting or inconsistent state and local regulation over these plans. *Davila*, 542 U.S. at 208; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (describing the remarks of Senator Williams, who introduced ERISA legislation in the Senate). Claims seeking damages beyond those authorized by ERISA § 502(a) do not put the cause of action outside the scope of the ERISA civil enforcement mechanism. *Davila*, 542 U.S. at 214–15.[2]

A plaintiff can bring a claim under § 502(a)(1)(B) if it is a "participant" or "beneficiary" of the plan, and the claim is to recover benefits, enforce rights, or clarify rights to future benefits under the plan. 29 U.S.C. § 1132(a)(1). When a participant assigns her rights under the plan to a medical provider, that provider qualifies as a "beneficiary." *Pennsylvania Chiropractic Ass'n v. Indep. Hosp. Indem. Plan, Inc.*, 802

---

[2] "[D]istinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance and allow parties to evade the pre-emptive scope of ERISA simply by relabeling their contract claims as claims for tortious breach of contract." *Davila*, 542 U.S. at 214 (internal quotations and citation omitted).

3

F.3d 926, 928 (7th Cir. 2015) (internal citation omitted). NFL players and their dependents assigned their rights under the plan to Advanced, [1-1] at ¶ 13, meaning Advanced qualifies as a "beneficiary" that could bring a lawsuit under § 502(a)(1).

To determine whether ERISA completely preempts a claim, a court must examine the complaint, the state law at issue, and plan documents. *Davila*, 542 U.S. at 211. To allege tortious interference with prospective economic advantage under Illinois law, Advanced must show: 1) a reasonable expectancy of entering into a valid business relationship; 2) the NFL's knowledge of the expectancy; 3) an intentional and unjustified interference by the NFL that induced or caused a breach or termination of the expectancy; and 4) damage to the plaintiff resulting from the NFL's interference. *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 300–01 (2001) (internal citation omitted); *see also Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015) (quoting *Voyles* for the legal elements of an intentional interference with prospective economic advantage claim).

As alleged in the complaint, whether the NFL insurance plan actually covered Advanced's services determines the "reasonableness" of Advanced's expectation to treat former NFL players and their dependents in the future. Beginning in 2007, Advanced submitted claims to Cigna and received payment, [1-1] at ¶¶ 12–13, and its history of treating former NFL players and their dependents was the basis for Advanced's expectancy. *Id.* at ¶ 17. That expectancy was based on the patients' status as beneficiaries under the plan. *Id.* The true dispute, then, is about Advanced's assigned rights and benefits under the plan, which is the type of claim ERISA

4

§ 502(a)(1)(B) permits. *See Studer*, 867 F.3d at 726. Advanced could have brought a claim under ERISA at some point—and has, against different defendants, in the Northern District of Texas. *See Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co., et al.*, No. 16-CV-2355 (N.D. Tex.).

For the second step of the *Davila* test, no other independent legal duty is implicated when the defendant's liability derives from the rights and obligations established by an ERISA-regulated plan. *Davila*, 542 U.S. at 213. Here, Advanced's "reasonable expectation" depends on establishing its right to payment under the plan, and since the assessment of Advanced's expectation requires interpreting a federally regulated contract, the claim cannot exist "independently" of ERISA under step two. *See Rice v. Panchal*, 65 F.3d 637, 644 (7th Cir. 1995), *as amended on denial of reh'g* (Nov. 6, 1995) ("[C]omplete preemption is required where a state law claim cannot be resolved without an interpretation of the contract governed by federal law.").

The "intentional and unjustified interference" element of the tort also requires an assessment of whether the plan covered the claims. Advanced states that the NFL interfered "by directing Cigna to deny all of Advanced's claims for payment for medical services as work-related" in retaliation for the diagnostic tests Advanced provided to former NFL players to qualify for disability payments. [1-1] ¶¶ 15, 21. The alleged interference is about the wrongful denial of benefits, a claim that could be brought under § 502(a)(1)(B). Although Advanced argues that it doesn't matter whether Cigna paid or should have paid the claims, its theory against the NFL does depend on wrongful conduct, and the only way the NFL's conduct would be tortious

5

is if it interfered with an entitlement to claims payment. Whether the benefits were wrongly denied establishes whether the NFL's interference was "intentional and unjustified," irrespective of Cigna's actions or the payment status of Advanced's claims. *See also Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 485 (1998) (purposeful interference requires showing that the defendant has committed some impropriety) (citing the Restatement (Second) of Torts § 766B, Comment *a* (1979)); *Midwest REM Enterprises, Inc. v. Noonan*, 2015 IL App (1st) 132488, ¶ 70, *as modified on denial of reh'g* (Nov. 10, 2015) (citing *Dowd's* impropriety standard). Whether the denial was improper requires interpreting and applying the terms of an ERISA-regulated plan, which means the claim does not exist "independently" of ERISA. *See Rice*, 65 F.3d at 644.[3]

ERISA completely preempts Advanced's state-law claim, and removal was therefore proper.[4] The motion to remand is denied.

## III. Motion to Transfer

A court may transfer a case "for the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Factors affecting convenience include the availability of and access to witnesses, the parties' distance from the forum, and the location of material events and sources of proof. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (internal

---

[3] Even if alleging unjustified interference is an affirmative defense, see footnote 2 in *Nation v. American Capital, Ltd.*, 682 F.3d 648, 651 n.2 (7th Cir. 2012), Advanced's tort claim is still completely preempted because the "reasonable expectation" element requires plan interpretation.

[4] Because I find complete preemption by ERISA, I do not reach the question of whether Advanced's claim is completely preempted by the Labor Management Relations Act.

citations omitted). The "interest of justice" prong relates to the efficient administration of the court system and may be the determinative factor. *Id.* Transfer decisions are made on a case-by-case basis. *Id.*

Advanced has been actively litigating similar, if not the same, ERISA claims, against different defendants, in the Northern District of Texas since August 2016. Notice of Removal, *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co., et al.*, No. 16-CV-2355 (N.D. Tex. Aug. 12, 2016), ECF No. 1. Discovery is ongoing. *See e.g.* Order, ECF No. 148. Recently, on September 23, 2019, the court stayed all deadlines until its ruling on all pending motions, including Advanced's and the defendants' respective motions for summary judgment. Order, ECF No. 192. Due to the considerable amount of time and resources expended by the district court over Advanced's ERISA claims, the interest of justice weighs in favor of transferring this case to the Northern District of Texas. *See Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 21 (1960); *see also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986) ("[R]elated litigation should be transferred to a forum where consolidation is feasible.") (internal citations and footnote omitted).[5]

Although Advanced's choice of forum is entitled to some weight in the analysis, here, a transfer presents no inconvenience to Advanced. It is capable of litigating in Texas and its lead counsel is based in Texas. *See* [23]. There may be witnesses located in this district, but there is adequate technology to preserve testimony for trial without significantly undermining its reliability or persuasive force. A transfer would

---

[5] Northern District of Texas' Local Rule 3.3(c) suggests that the NFL, as the removing party, must file a notice of a related case. N. Dist. Tex. Civ. R. 3.3.

7

not shift inconvenience from one party to another, and instead would conserve judicial resources and avoid inconsistent approaches to plan interpretation across closely related litigation.

Because I conclude the case should be transferred, I do not reach the NFL's motion to dismiss. The transferee court is in a better position to manage the next steps in this litigation. I note, however, that my decision that ERISA completely preempts Advanced's claim here does not necessarily mean the NFL is entitled to a judgment in its favor. ERISA § 502(a)(1)(B) "does not specify who may be sued. Nor does it limit 'the universe of possible defendants.'" *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 913 (7th Cir. 2013) (*citing Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 246 (2000)). *See also LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 843 (5th Cir. 2013) ("This court has found that a claimant may bring a suit against an employer when the plan has no meaningful existence apart from the employer, and when the employer made the decision to deny benefits.") (internal citation omitted). Whether Advanced should be given an opportunity to pursue its claim against the NFL under ERISA should be addressed by the transferee court.

## IV. Conclusion

Advanced's motion to remand [17] is denied, and the NFL's motion to transfer [13] is granted. The clerk shall transfer this case to the United States District Court for the Northern District of Texas forthwith.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: October 10, 2019